## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SARAH BARBOUR, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | File No.: 1:24-cv-00520- MHC-JSA |
| | ) | |
| BOARD OF EDUCATION FOR | ) | |
| CITY OF MARIETTA, | ) | |
| DEMARCOS HOLLAND | | |
| | | |
|     Defendants | | |

## DEFENDANT HOLLAND'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT THEREOF

**COMES NOW**, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, DeMarcos Holland (hereinafter, the "Defendant", "Defendant Holland") by and through his undersigned counsel, and hereby files this Renewed Motion For Judgment on the Pleadings and Brief in Support Thereof, as set forth below:

I. **INTRODUCTION**

On July 22, 2024, Plaintiff filed her Second Amended Complaint (Doc. 39) against Marietta City School District[1].  Plaintiff represented in her motion to amend her complaint that the only change was the correction of the name change of the Marietta City School District to the Board of Education of the City of Marietta.  (Doc. 24, p.1) In her Second Amended complaint, Plaintiff seeks damages for racial

discrimination and retaliation under 42 U.S.C. § 1981, 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

Plaintiff only alleges claims against Defendant Holland under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Plaintiff also alleges a Georgia law claim for whistleblower retaliation under O.C.G.A. § 45-1-4 against the School Board. Finally, Plaintiff has alleged punitive damages against Defendant Holland. (Doc. 39, p. 40)[2] Defendant Holland has filed his answer to Plaintiff's Second Amended Complaint. (Doc. 51) In sum, Plaintiff's claims against Defendant Holland are for racial discrimination and retaliation under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 and punitive damages. (Doc. 39, ¶ 75-86, 87-94, and p. 40) As set forth below, these claims fail as a matter of law under *Twombly/Iqbal*.

## II.   STATEMENT OF FACTS

Plaintiff's Second Amended Complaint alleges that she began her employment with the Marietta School District as the Director of the Marietta Student Life Center ("MSLC"), and Plaintiff remains the director of the MSLC. To that end, she has received employment agreements extending her employment and has no allegation of any unsatisfactory performance evaluation. (Doc. 39, ¶ 10, 82)

In short, Plaintiff's Second Amended Complaint contains no plausible claim of discrimination or retaliation against Defendant Holland under any legal theory. Moreover, Plaintiff alleged in a conclusory manner the two Section 1981/1983 claims (discrimination and retaliation) against both Defendant Holland and the

School Board by incorporating all of the allegations in the Second Amended Complaint against both Defendant Holland and the School Board in Claims One and Two. Doc. 39, p. 27, ¶75; p. 31, ¶87. To be clear, both Counts I and II contain the language: "Plaintiff incorporates paragraphs . . . by reference as if fully stated herein" without specifying which factual allegations apply to which defendant. See, Doc. 39, ¶ 75-86, 87-94, and p. 40.

A.   <u>Overview of Defendant Holland's Supervision of Plaintiff</u>

According to the Second Amended Complaint, Plaintiff has served as the director of the MSLC since 2021 and continues to do so. (Doc. 39, ¶10, 82) In August 2022, Defendant Holland was hired as the Chief Human Resource Officer of MCS. (Doc. 39, ¶9,15) Prior to August 2022, Defendant Holland served as Principal of Marietta High School and was Ms. Barbour's supervisor. (Doc. 39, ¶15) So Defendant Holland supervised Plaintiff <u>prior to</u> Plaintiff filing this lawsuit or her letter complaint in October 2023. (Doc. 39, ¶40)

B.   <u>Plaintiff's First Allegation of Race Discrimination Against Defendant Holland</u>

Plaintiff is white. (Doc. 39, ¶ 1) Defendant Holland is Black. (Doc. 39, ¶ 15) Plaintiff's first allegation of race discrimination against Defendant Holland involved a disclosure by Plaintiff of a student record violation, e.g., Federal Educational Rights and Privacy Act ("FERPA") by Rona Roberts.

To explain this allegation, Plaintiff claims that employee Shikera Cook, a Black female, was responsible for divulging student information in District paperwork under the supervision of Rona Roberts, another alleged black employee. (Doc. 39, ¶ 12, 18, 116)

Following this report, Rona Roberts, who was close to Ms. Cook, immediately became hostile toward Ms. Barbour. (Doc. 39, ¶ 14) Plaintiff claims that Ms. Cook did not initiate a complaint about Ms. Barbour; however, Dr. Holland approached Ms. Cook and spontaneously, without prompting, asked if Ms. Cook was quitting because Ms. Cook felt that Ms. Barbour discriminated against her based on race. Ms. Cook allegedly denied Dr. Holland that she felt that Ms. Barbour racially discriminated against her. (Doc. 39, ¶ 17)

After Ms. Barbour allegedly reported the FERPA violations by Ms. Cook, a conflict arose because Dr. Roberts began interfering with MSLC's operations. (Doc. 39, ¶18) Defendant Holland directed Ms. Barbour and Dr. Roberts to try to work together. (Doc. 39, ¶ 18) When Plaintiff attempted to follow the agreed-upon communication protocols, Dr. Roberts refused since Defendant Holland was friendly to her and would not hold her accountable. (Doc. 39, ¶ 18)

Then, Defendant Holland, Dr. Roberts, and Ms. Barbour met to attempt to work through the communication issues. (Doc. 39, ¶18) After this meeting, Plaintiff alleged that Defendant Holland pulled Ms. Barbour aside and accused her of having a "problem with Black women." (Doc. 39, ¶19) Plaintiff vigorously protested this

Inflammatory, out-of-nowhere accusation, Defendant Holland responded by telling her to be quiet and not argue with him. (Doc. 39, ¶19)

Though Plaintiff and Dr. Roberts allegedly hold similar rank and title, and both reported to Defendant Holland in the 2022-2023 school year, Defendant Holland provided more support and resources to Dr. Roberts than he provided to Ms. Barbour. (Doc. 39, ¶ 21) For example, Ms. Barbour requested weekly 1:1 meeting with Dr. Holland for coaching. (Doc. 39, ¶ 22) He told her that he did not have time for her. However, Defendant Holland agreed to meet weekly with Dr. Roberts. (Doc. 39, ¶ 22)

In May 2023, Defendant Holland completed Ms. Barbour's year-end evaluation. Ms. Barbour alleged that she received a lower score on a particular category based on a race-related complaint from a Black employee that was deemed unfounded. (Doc. 39, ¶ 23) When Ms. Barbour asked for the basis of the reduced rating, Defendant Holland's alleged response was that the complaint should never have come to his office, and she should have anticipated it being made, even though it was not founded. (Doc. 39, ¶23)

C.   No Allegation that Defendant Holland had any role in Plaintiff's Board Invitation Complaint

Next, Plaintiff claims that she was not invited to present to the Board of Education about the MSLC. (Doc. 39, ¶24) Plaintiff makes no allegation that

Defendant Holland had any decision or input as to whether Plaintiff would or would not be invited to any such presentation at the Board Meeting. Defendant Holland misled the Marietta Board of Education about the MSLC, which resulted in the Board tabling the program's budget for the 2023-2024 school year. Plaintiff alleged no details about how or when Defendant Holland misled the board. (Doc. 39 ¶ 25)

   D. <u>Defendant Holland Not Involved with Any Budget Cut</u>

To the contrary, Plaintiff has no allegation that the MSLC was <u>not</u> fully funded by the Board in 2023. That's because the Board fully funded MSLC.

   E. <u>Job Duty Elimination</u>

Following Plaintiff's protests of Defendant Holland's baseless threats related to race against her, Defendants gradually began eliminating her duties and responsibilities in her current position and eliminating aspects of the programming the MSLC offers in anticipation of eliminating her position at the end of the year. (Doc. 39, ¶29) In conclusory fashion, Plaintiff alleged that the MSLC programming was substantially eliminated, to the detriment of thousands of students, after Defendant Holland made disparaging and false statements about Ms. Barbour to the Executive Cabinet and Board of Education members. (Doc. 39, ¶31) The Second Amended Complaint fails to assert any specific "disparaging and false" statement by Defendant Holland to anyone, much the less the Board Members. As such, Plaintiff has no plausible allegation that Defendant Holland did anything detrimental

to her director job duties or the MSLC budget based on her race, much less based on any alleged protest relating to race discrimination.

      F. <u>Plaintiff's Protected Activity</u>

Plaintiff allegedly opposed Defendant's disparate treatment relative to a Black comparator in a complaint on October 10, 2023, in her first express allegation on record of race discrimination and retaliation; (2) when she filed an EEOC charge of race discrimination on November 3, 2023; and (3) the filing of this lawsuit on February 2, 2024.  Doc. 39 ¶¶ 40, 41, 89 (dates of Plaintiff's internal complaint and EEOC charge); Doc. 1 (date of filing suit).  Plaintiff failed to allege any adverse action based on any decision by Defendant Holland after any of Plaintiff's protected activity.

**III**. **ARGUMENT AND CITATION TO AUTHORITY**

      A. <u>Legal Standard</u>

According to Fed.R.Civ.P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." To explain, by the plain language of Rule 12(c), a party may not move for judgment on the pleadings until "[a]fter the pleadings are closed." The pleadings are closed only when a complaint and answer have been filed. *See* Doc. 51.

A motion for judgment on the pleadings is governed by the same standards that apply to a motion to dismiss under Rule 12(b)(6). *Mobile Telecomms. Techs., LLC v. United Parcel Serv.*, 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016). "The main

difference between the motions is that a motion for judgment on the pleadings is made after an answer, and that answer may also be considered in deciding the motion." *United States v. Bahr*, 275 F.R.D. 339, 340 (M.D. Ala. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

A district court should grant a motion to dismiss if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). So, a district court can adequately dismiss a complaint for failure to state a claim when "ignoring any 'mere conclusory statements,' the remaining allegations do not 'plausibly suggest' that the defendant is liable." *Harper v. Prof'l Prob. Servs. Inc.*, 976 F.3d 1236, 1240 n.4 (11th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009)).

The following are conclusory allegations that the Court should ignore. For example, Plaintiff alleged that Holland was a "final decision-maker" concerning (1) supervising Ms. Barbour directly during this time, including overseeing her work in directing the MSLC, and providing coaching and counseling opportunities; (2) enforcing and implementing the Board's antidiscrimination and antiretaliation personnel policies and complaint procedures; and (3) gatekeeping information

communicated to the Board regarding information and data about the MSLC's performance. In addition, Holland's misreporting of information to the Board in May 2023, which the Board accepted without independently investigating, that funding and program cuts to MSLC commenced. (Doc. 39, ¶ 78)   These conclusory allegations should be ignored by the Court Federal Rule of Civil Procedure 8, which requires a complaint containing a short and plain statement of the claim showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a).  There is nothing in the preceding claims that they are discriminatory based on race or are retaliatory.

      B.    <u>Impermissible Shotgun Pleadings</u>

Plaintiff's Second Amended Complaint violates another pleading standard: she impermissibly lumps her Section 1981/1983 claim against Defendant Holland with the School Board.

Under federal law, it is generally understood that Rule 10(b) sets forth a "one claim per count" rule. *Woodburn v. State of Fla. Dep't of Child. & Fam. Servs*., 854 F. Supp. 2d 1184, 1204 (S.D. Fla. 2011). A single count that presents several distinct claims for relief constitutes a shotgun pleading. "Shotgun pleadings" are cumbersome and confusing complaints that fail to comply with FRCP 8 and 10. See *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)[1].  Rules 8 and 10 of the Federal Rules of Civil Procedure work together to

---

[1] All shotgun pleadings share two characteristics. *See Dorman v. Palm Beach Cnty.*, 2020 WL 2078527, at *1 (S.D. Fla. Apr. 30, 2020) (Altman, J.). First, they "fail to one degree or another, and in one way or another, to give the defendants adequate

require the pleader to present claims discretely and succinctly so that each defendant can discern what is being claimed and frame a responsive pleading; the court can determine which facts support which claims, and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not. *Fikes v. City of Daphne*, 79 F.3d 1079, 1082–83 (11th Cir. 1996) (citation omitted). Pleadings that assert multiple claims against multiple defendants without specifying which claim(s) apply to which defendant(s) are improper. *Weiland*, 792 F.3d at 1323. That is precisely what Plaintiff alleged against Defendant Holland in Count I and II—Doc. 39, p. 27, ¶75, 80-86; p. 31, ¶87, 90-94.

### 1. Commingling of Claims Against the Defendants

By commingling and lumping together BECM's alleged actions with Defendant Holland (and not making any attempt to allege or explain Defendant Holland's above and beyond any BECM claims), it is unclear on what basis Plaintiff is pleading that Defendant Holland is liable under each count for discrimination and retaliation under Section 1981/1983 in Count I and Count II. (Doc. 39, p. 27, ¶75, 80-86; p. 31, ¶87, 90-94) Specifically in Counts I and II, Plaintiff failed to identify

~~any allegations that Defendant Holland retaliated against Plaintiff alone. To the~~ notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Second, they "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (cleaned up).

extent that Plaintiff attempts to argue that Defendant Holland is mentioned individually in Paragraphs 81 and 92, there were no specific allegations that Defendant Holland undertook independently from the BECM.    All allegations regarding discrimination or retaliation involve these vague claims regarding Defendant Holland.

For these reasons, Plaintiff has failed to state a claim under Rule 12(b)(6) against Defendant for any retaliation or discrimination under Section 1981 or 1983.

C.  No Plausible Discrimination/Retaliation Claim under Section 1981

Plaintiff's Section 1981 claims against Defendant Holland must be dismissed. Under federal law, Section 1983 provides the exclusive remedy for any racial discrimination claims arising under Section 1981 against public officials, such as Defendant Holland.  In *Butts v. County of Volusia*, the Eleventh Circuit explained that while "§ 1981 protects against racial discrimination by private and state actors," it "does not itself create a remedy for that violation." 222 F.3d 891, 894 (11th Cir. 2000).

Instead,  "§ 1983 constitutes  the exclusive remedy against  state  actors  for violations of the rights contained in § 1981." *Butts*, 222 F.3d at 892 (citing *Jett v. Dallas Indep. School Dist*, 491 U.S. 701, 731–32 (1989)).  In her Second Amended Complaint, Plaintiff claims that Defendant Holland is individually liable under Section 1981 for racial discrimination.  (Doc. 39, ¶ 75-86) For any retaliation claim,

Plaintiff again alleged the basis of the claim arising under Section 1981. (Doc. 39, ¶ 87-94)    As such, any Section 1981 claim must be dismissed.

      D.     No Plausible Race Retaliation under Section 1983

Plaintiff's retaliation claims arising under Section 1983 fail.  "To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that she engaged in statutorily protected activity, she suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co*., 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington*, 548 U.S. 53)[2]

Here, Plaintiff has not suffered any adverse employment action for purposes of any Section 1983 retaliation claim because she has retained her employment as a director and received employment contracts.  There is no allegation that she lost any benefits or had a reduction in salary. A plaintiff can advance a discrete retaliation claim when an employer takes *any* adverse action against her for engaging in protected conduct. *See* Nat'l *R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (noting that "termination, failure to promote, denial of transfer, or refusal to hire" are the kinds of adverse actions a plaintiff may rely on to assert a discrete

---

[2] Based on the explicit language in the opinion, the *Muldrow* decision is directly on point for Title VII discrimination cases <u>only</u>. It does not apply to Title VII retaliation cases, which used the "materially adverse" and "significant" harm standard. *Muldrow v. City of St. Louis*, 144 S.Ct. 967, 976 (2024).

retaliation claim).  Plaintiff has no claim that she was terminated, denied a transfer or was not promoted.

In addition, Plaintiff allegedly opposed Defendant's disparate treatment relative to a Black comparator in a complaint on October 10, 2023, in her first express allegation on record of race discrimination and retaliation; (2) when she filed an EEOC charge of race discrimination on November 3, 2023; and (3) the filing of this lawsuit on February 2, 2024.  Doc. 39 ¶¶ 40, 41, 89 (dates of Plaintiff's internal complaint and EEOC charge); Doc. 1 (date of filing suit).

In terms of her retaliation claim, Plaintiff has a time sequence problem. Plaintiff's Second Amended Complaint contains no allegations of any adverse action by Defendant Holland, much less any adverse action <u>after</u> any alleged protected activity, e.g., her first alleged disclosure in October 2023. (Doc. 39 ¶ 40)   With no cognizable adverse action by Defendant Holland <u>after</u> her protected activity, Plaintiff has not plausibly alleged any retaliation claim by Defendant Holland. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc)[3].  As a result, any Section 1983 retaliation claim must be dismissed.

---

[3] Under federal law, "[t]o establish the necessary causation, a plaintiff must demonstrate that 'her protected activity was a but-for cause of the alleged adverse action by the [defendant]." *Gogel*, 967 F.3d at 1135 (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). "In other words, a plaintiff must prove that had she not engaged in the protected conduct, she would not have [suffered the adverse action]." *Gogel*, 967 F.3d at 1135 (citing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)).

E. Qualified Immunity Bars Any 1981/1983 Claim Against Defendant
   Holland.

Even if Plaintiff's Section 1981 and 1983 claims survive the foregoing legal

defenses (and they do not), Plaintiff cannot overcome Defendant Holland's qualified

immunity.

Qualified immunity is a complete bar Plaintiff's Section 1983 claims against

Defendant Holland. "The defense of qualified immunity completely protects

government officials performing discretionary functions from suit in their individual

capacities unless their conduct violates 'clearly established' statutory or constitutional

rights of which a reasonable [official] would have known.'" *Marbury v. Warden*, 936

F.3d 1227, 1232 (11th Cir. 2019) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Significantly, the immunity is "from suit rather than a mere defense to liability."

*Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). As such, the Supreme Court has

"stressed the importance of resolving immunity questions at the earliest possible stage

in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To be entitled to qualified immunity, the defendants "must establish that

"[they] were acting within the scope of [their] discretionary authority." *Millspaugh*

*v. Cobb Cnty. Fire and Emergency Svcs.*, No. 22-10132, (11th Cir. November 22,

2022).

To be eligible for qualified immunity, the officers must demonstrate that they

acted within their discretionary authority's scope. *O'Rourke v. Hayes*, 378 F.3d 1201,

1205 (11th Cir. 2004). "To determine whether an official was engaged in a

14

discretionary function, [courts] consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "[T]he determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1999). Here, Plaintiff has alleged that Defendant Holland was acting in his official capacity as either a principal or Chief Human Resource Officer in the Marietta City School District. (Doc. 39, ¶ 9, 15) As such, Defendant Holland was acting within his discretionary authority.

Once the discretionary authority issue is resolved, the burden shifts to the plaintiff to show that (1) the defendant violated her constitutional rights and (2) the defendant's conduct was prohibited by clearly established law. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014); *Gilmore v. Ga. Dept. of Corrections*, 2024 WL 3559728*12-13 (11th Cir. 2024).

To overcome qualified immunity, a plaintiff must point to specific actions of the defendant that violate clearly established law[4]. *Montoute v. Carr*, 114 F.3d 181, 184

---

[4] "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' " *Al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ). "So conceived, the object of the 'clearly established' immunity standard is not different from that of 'fair warning.' " *United States v. Lanier*, 520 U.S. 259, 270 (1997). "Our Circuit uses two methods to determine whether a reasonable official would understand that his conduct violates a constitutional right." *Moore v. Pederson*, 806 F.3d 1036, 1047 (11th Cir. 2015). The first asks

(11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). "This burden is not easily discharged: That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Jones v. Ward*, 514 F. App'x 843, 846-47 (11th Cir. 2013). The Eleventh Circuit has held "many times" that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). A "plaintiff cannot rely on general, conclusory allegations or broad legal truisms to show that a right is clearly established." *Kelly v. Curtis*, 21 F.3d 1544, 1550 (11th Cir. 1994); *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (reiterating the longstanding principle that clearly established law should not be defined at a high level of generality and must be particularized to the facts of the case.) "The salient question in a qualified immunity analysis is whether the official had fair warning that their conduct was unlawful." *Jackson v. Cowan*, 2022 WL 3973705, *4 (11th Cir.

---

whether "binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed ... gave [the defendant] fair warning that his treatment of [the plaintiff] was unconstitutional." *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015). The second asks whether a public official's " 'conduct lies so obviously at the very core of what [federal law] prohibits that the unlawfulness of the conduct was readily apparent to [the public official], notwithstanding the lack of fact-specific case law' on point." *Moore*, 806 F.3d at 1047 (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011) (internal quotation marks omitted) ). But this principle, which offers a narrow exception to the general rule that only factually specific analogous caselaw can clearly establish a constitutional violation, is reserved for rare cases. *Coffin v. Brandau,* 642 F.3d 999, 1015 (11th Cir. 2011).

September 1, 2022). (Cleaned up). The law can be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court. *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 823 n. 4 (11th Cir. 1997).[5]

Once qualified immunity has been alleged, the Plaintiff must show that the law was so "clearly established" that all but an incompetent public official or an official acting with malice would fail to know the law governing her conduct. *Harlow*, 457 U.S. at 818-19. *See also Keating v. City of Miami,* 598 F.3d 753, 760 (11th Cir. 2010) ("At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined.") (internal quotations omitted). "A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Leslie v. Hancock County Bd. of Educ.,* 720 F.3d 1338, 1343–44 (11th Cir. 2013). This test is now referred to as the "objective reasonableness" standard. *Stough v. Gallagher*, 967 F.2d 1523, 1525; *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (clarifying the objective reasonableness test by rendering it more fact-specific: "contours of the [constitutional right] in question must

---

[5] A "right can be clearly established in one of three ways." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). Plaintiff "must point to either (1) 'case law with indistinguishable facts,' (2) 'a broad statement of principle within the Constitution, statute, or case law,' or (3) 'conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.' " *Id.* (quoting *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)

be sufficiently clear that a reasonable official would understand that what he is doing violates that right").

The Eleventh Circuit has held that "[u]nless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Rodgers v. Horsley*, 39 F. 3d. 308, 311 (11th Cir. 1994).

Here, Plaintiff cannot establish that her race discrimination or retaliation claims under Section 1981/1983 were clearly established given that, at worst, her job assignments changed as director.  Or she alleged the following: "Holland made unsolicited inquiries to, and tried to recruit, Black employees, including Shikera Cook and likely Rona Roberts, regarding whether they felt Ms. Barbour harbored racial bias, demonstrating that he abuses his position as CHRO to use the anti-discrimination policy." (Doc. 39, ¶ 38)

Assuming these allegations are true,  there is no clearly established precedent giving an employee a lower score in one part of her evaluation, inquiries regarding potential racial animus or counseling her regarding problems with black staff

members is a discriminatory or retaliatory act in the 11th Circuit or Supreme Court jurisprudence.

Further, there is simply no legal precedent to invalidate qualified immunity for a black school official, where a white employee complains that she was not given one-on-one weekly meetings, was not invited to a Board meeting (for a Board on which she does not sit), and her job assignments changed as MSLC director, but she remained the MSLC director. There is no "clearly established" precedent to give Defendant Holland a fair warning that his conduct violated established constitutional law. To the extent that Plaintiff attempts to rely on the *Muldrow* decision, Plaintiff cannot rely on that decision because the Supreme Court did not change the definition of an adverse action until June 2024, which was well after these alleged actions by Defendant Holland.

Qualified immunity also bars Plaintiff's claims for another reason. To survive, "a plaintiff must plead that **each** Government-official defendant, **through the official's own individual actions,** has violated the Constitution." *Keating,* 598 F.3d at 763 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (emphasis added). Here, the Second Amended Complaint does not allege that Defendant Holland supported any other school administrator or Board Member to discriminate or retaliate against her based on her race or any complaint about race discrimination. And there is no allegation that Defendant Holland wanted to delay any MSLC funding due to any LBGTQ issues. As such, Plaintiff has no facts that could reasonably infer that

Defendant Holland was motivated by race to discriminate or retaliate against Plaintiff because he took no adverse employment action against her.

In sum, Plaintiff has failed to allege individual actions by Holland sufficient to find, or even reasonably infer, a constitutional violation under clearly established law.

F. No Punitive Damage Claim Against Defendant Holland

The Plaintiff's claim for punitive damages against Defendant Holland should be dismissed as Plaintiff's Second Amended Complaint fails to set forth any factual basis for awarding such damages.

Plaintiff has no plausible claim that Defendant Holland would be liable under any circumstance for such damages. The standard for granting punitive damages under Section 1981 is based on behavior showing malice or reckless indifference to federally protected rights. *See Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 901 n. 11 (11th Cir.2011). "Malice means an 'intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.' " *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir.1999)). "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir.2002) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999)).

Here, Plaintiff's Second Amended Complaint fails to establish any plausible allegation that Defendant Holland acted with malice or callous disregard. Accordingly, the Plaintiffs' claim for punitive damages should be dismissed.

## <u>CERTIFICATION OF COUNSEL</u>

The undersigned, under this Court's Local Rules, hereby certifies that this

The document has been prepared with Times New Roman 14 points.

Respectfully submitted this 31st day of August 2024.

**GDCR, LLC**

*Attorneys for Defendant*

***<u>/s/Randall C. Farmer</u>***
Randall C. Farmer
Georgia Bar No. 255345

49 Atlanta Street
Marietta, GA 30060
Tele: 770-422-1776
Fax: 770-426-6155
<u>rfarmer@gdcrlaw.com</u>

SARAH BARBOUR,        )
                                      )
     Plaintiff,        )
                                      )
v.                           )   Civil Action
                                      )   File No.: 1:24-cv-00520- MHC-JSA
BOARD OF EDUCATION FOR  )
CITY OF ARIETTA, DEMARCOS )
HOLLAND                 )
                                      )
    Defendants         )

## CERTIFICATE OF SERVICE

This is to certify that on August 31, 2024, I electronically filed the foregoing

**DEFENDANT HOLLAND'S RENEWED MOTION FOR JUDGMENT ON**

**THE PLEADINGS AND BRIEF IN SUPPORT THEREOF** with the Clerk of

Court using the CM/ECF system, which will automatically send a copy of the same

to Plaintiff's counsel of record at:

Anita K. Balasubramanian
Georgia Bar No. 372029
**BUCKLEY BALA WILSON MEW LLP**
600 Peachtree Street, NE, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
abala@bbwmlaw.com

**GDCR, LLC**

*Attorneys for Defendant*

***/s/Randall C. Farmer***
Randall C. Farmer

23

Georgia Bar No. 255345

49 Atlanta Street
Marietta, GA 30060
Tele: 770-422-1776
Fax: 770-426-6155
rfarmer@gdcrlaw.com

Doc. 3953189